WHITTAKER vs. THE CITY OF JANESVILLE and its Treasurer.

CONSTITUTIONAL LAW. — (1, 2) *Const. of Wis., art. VIII, sec. 8.* — *Act imposing, etc., a tax.* — *Legislative quorum.* (3, 4) *Art. I, sec. 9* — *Power of legislature over remedies against improper taxation.*

INJUNCTION: (5–8) *To restrain collection of taxes.*

1. The provision of sec. 8, art. VIII of the state constitution, which requires the presence of three-fifths of all the members elected to con-

Whittaker vs. The City of Janesville and its Treasurer.

stitute a quorum, " on the passage in either house of the legislature of any law which imposes, continues or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money," refers to a *state* tax, and not to a local tax. *Watertown v. Cady*, 20 Wis., 501; and *Bushnell v. Beloit*, 10 id., 228, followed.

2. Where, under existing laws, certain state taxes had become lawfully chargeable upon the taxable property of a city, but the collection thereof (as well as of the local taxes) had failed for several years in consequence of a defect in the city charter in that it violated the constitutional rule of uniformity in taxation, a subsequent act of the legislature remedying the defect and providing for the collection of the state (as well as local) taxes for those years, is *held* not to be an act imposing, continuing or renewing a tax, within the meaning of the said sec. 8, art. VIII of the constitution.

3. A statute which attempted to deprive a taxpayer of any remedy by injunction to restrain the sale of land for taxes, or by action to set aside the taxes, in a case where the same were inherently unjust or inequitable, would be void, as contravening sec. 9, art. I of the state constitution, which declares that " every person is entitled to a certain remedy in the laws for all injuries or wrongs that he may receive," etc.

4. Sec. 27, ch. 48, P. & L. Laws of 1862, Supp., forbids the issue of an injunctional order or other process to restrain the sale of lands in the city of Janesville for taxes, or to enjoin proceedings for the collection of taxes authorized by that act, and prohibits the commencement of actions to set aside such taxes, " unless the person commencing such action or proceedings shall first pay to the treasurer of said city the amount of all taxes remaining unpaid thereon, *whether such taxes have been regularly assessed or not*," and provides that if it shall appear on the trial or hearing of such action or proceeding that the amount of taxes paid by the plaintiff " is not the full amount of taxes *justly chargeable* upon such lands," the action or proceeding shall be dismissed. *Held*, that this provision applies only to actions or proceedings to set aside or restrain the collection of taxes on the ground that they are *irregularly assessed*, and not to cases where relief is sought against taxes as inherently unjust and inequitable; and the provision is valid.

5. Where the action is to restrain the collection of taxes upon a number of lots, and it appears that as to *a portion* of them the taxes are objected to only upon legal and technical grounds, the action must be *dismissed* under said sec. 27, whatever may be the general rule in equity in such cases.

6. The fact that the tax assessed upon a lot exceeds the sum justly chargeable by law, is no excuse for the nonpayment of the latter, if the illegal excess is known and separable from the sum justly due.

7. The fact that two or more lots or parcels of land are valued together, although at the time of such valuation they were not owned by the same person or occupied as one parcel, would be ground for an injunction restraining the collection of the tax, though no portion of the tax justly chargeable to plaintiff's lot was paid.

8. The fact that the collecting officers failed to do their duty in collecting taxes due from plaintiff when they were first assessed, by seizing and selling the personal property or otherwise, is no ground for restraining proceedings to collect such taxes upon a reassessment.

APPEAL from the Circuit Court for *Rock* County.

By an act approved February 21, and published February 27, 1862, and subsequently published as chapter 48 in the supplement to the Private and Local Laws of 1862, the clerk of the city of Janesville was required, on or before the third Monday in March of that year, to make out a separate tax list for each of the years 1854, 1855, 1856 and 1857, each of such lists to contain a schedule of all the property in said city, which was included (and liable by law to be included) in the assessment roll thereof for the year for which such list should be made; to correct imperfect descriptions of any lands found in such rolls; and, in cases where several lots or parcels of land were valued together on such rolls (not having been owned by the same person and occupied as one parcel when the valuation was made), to apportion to each of such lots or parcels its just proportion of such valuation. By the second section of the act, the city assessors were required to review such lists when completed by the clerk; to insert any property wrongfully omitted; and in case any lands described in said tax lists were not valued, to set down opposite thereto the just value thereof at the time the same ought to have been valued; and to annex to each of said lists their certificate in a prescribed form. By the third section, a notice of the completion of such tax lists, signed by the mayor and the clerk of the city, was

required to be published, with a further notice that such lists would remain in the clerk's office, open to inspection, for six days from the first publication of such notice, and that any person feeling himself aggrieved by anything contained in or connected with the same, could apply for redress to the common council of the city, at a time and place to be specified in the notice, etc. Section four provided that when said tax lists should have been approved by the council, the city clerk should apportion in each of them, on all the property therein mentioned, the amount of all state, county and city taxes required by law to be assessed, levied and collected in said city in the year for which such list should be made out, with interterest on such amount from the first of January in the year next following said year, to the third Monday in May, 1862; that he should set opposite to each lot and parcel of land and other item of property in such tax list, in separate columns, the amount of said state, county and city taxes, and interest as aforesaid, properly chargeable thereon, adding thereto for the expenses of collection, in separate columns, as follows: "in each of the tax lists for the years 1854 and 1855, five per centum; and in said lists for each of the years 1856 and 1857, five per centum on the amount of state and county taxes, * * and one-half of one per centum for the amount of the city taxes." The following sections provided for the delivery of copies of such lists, with the usual warrant for collection, to the city treasurer (sec. 5); for the publication, by the treasurer, of a *notice* that he had such lists and warrants, and would receive payment of such taxes until the third Monday in May, 1862 (sec. 6); for the application, in settlement of such taxes, of all payments which had already been made upon the taxes of the years above named (sec. 9); and for the distress and sale of the goods and chattels, found in Rock county, of any person refusing or neglecting to pay taxes thus imposed upon him (sec. 10). Sections eleven and twelve provide for the making of a list, in the usual form, of lands on which said taxes should remain un-

paid on the second Monday in June, 1862, and the publication of such delinquent list for each of the years specified, once a week for three successive weeks, in a newspaper of said city, together with a notice, also in the usual form, of the sale of the lands for such delinquent taxes, etc., on the third Monday in July, 1862. The provisions in regard to such sale, and the issue of tax certificates and tax deeds based thereon, are believed to be substantially like those of the general laws of this state in reference to tax sales.

Section 27 of said act is in the following words: "No injunction order, or other process or order, shall be allowed or issued by any court or judge or commissioner in this state, to enjoin or restrain the sale of any lands in the said city of Janesville for taxes, or to enjoin or restrain the execution or recording of any deed executed in pursuance of said sales, or to enjoin or restrain or interfere with any proceedings taken, or threatened or attempted to be taken, for the collection of the taxes authorized to be collected by the provisions of this act; and no action nor proceedings shall be commenced in any court of this state, for the purpose of setting aside the taxes on any lands situated in the city of Janesville, or to invalidate or set aside any certificate of sale of lands in said city for taxes, or any tax deed conveying lands in said city, or for the purpose of recovering the possession of land in said city held under a tax deed, unless the person commencing such action or proceedings *shall first pay to the treasurer of said city the amount of all taxes remaining unpaid thereon, whether such taxes have been regularly assessed or not;* and the person commencing such action or proceedings shall allege in his complaint or papers, *either that all taxes on such lands have been paid* within the time required by law for the payment thereof, or, if payment is made by virtue of this section, shall allege *the amount which has been paid* to the city treasurer *to enable such person to commence such action* or proceedings, the time of payment, and the year for which such payment is made; and if it shall appear.

upon the trial or hearing of such action or proceedings, *that the amount so paid is not the full amount of taxes justly chargeable upon such lands,* such action or proceedings shall be dismissed, and costs taxed against the plaintiff therein."

The present action was commenced in July, 1862, to restrain the sale of certain lots and lands of the plaintiff in said city of Janesville, for the taxes of 1854, 1855, 1856 and 1857, as re-assessed under the act above described. The action was continued from time to time, awaiting the issue of other litigation, until 1870, when an amended complaint was filed, and an answer thereto. The complaint did not contain any such averments in regard to the payment of the taxes upon the lands in question, as are required by the terms of sec. 27 above recited. The grounds upon which relief was sought will sufficiently appear from the facts found by the circuit court, and its conclusions of law, as the same are recited in the judgment. They were substantially as follows:

That at the time of the commencement of the action, plaintiff was the owner in fee simple of all the real estate described in the complaint, and is now the owner of the same, except certain lots which he has since conveyed by warranty deeds with full covenants.

That the state, county and city taxes for the year 1854, upon all of said several lots of land, were paid by or on behalf of the plaintiff.

That the provisions of the act of 1862 (above named) were not complied with by the city or its officers in certain material matters; and in particular, that the *notices* required by sections three and six of the act were not published in the manner therein required, nor in any manner.

That in the tax lists mentioned in said complaint, lots and parcels of land owned by the plaintiff were valued together with other lots never owned or occupied by the same person, nor occupied as one parcel, contrary to the provisions of said act.

That the tax list, delinquent tax lists and advertisement of

delinquent lands, all mentioned in said complaint, did not contain any valuation of the lots and lands therein described, or any of them, or any statement of the amount of taxes assessed, due or charged thereon, as required by the provisions of said act, but that the figures placed opposite the said several lots, in said lists and advertisement, were given no significance by connecting them with the word dollars, the dollar sign $, the decimal point, or in any other manner whatever. That there is included in the said pretended amounts set opposite to the several lots, in the said delinquent tax list and the said advertised lists respectively, in each instance and opposite each of said lots, the sum of fifty cents, or what is claimed by said city and its officers, to be the sum of fifty cents; which addition is not provided for by the provisions of said act, and is unwarranted by law.

That the plaintiff, since the year 1846, has been a continual resident of the city of Janesville, and that at and during all of the time the treasurer of said city had in his possession said pretended tax lists and warrants for the collection of said taxes, the plaintiff had in his possession and free and open to access to said treasurer a large amount of personal property not exempt from execution, and more than sufficient to pay all the aforesaid taxes, and has now personal property in like manner accessible to said treasurer, out of which said personal property the said treasurer could have collected said pretended reassessed taxes in the manner provided for in section ten of said act; and that plaintiff was in possession of the real estate described in said complaint, but that said treasurer never called upon him for said taxes or made any attempt to collect them.

That it is the purpose of said city and its treasurer to sell said lots for the purpose of collecting the pretended taxes mentioned in the complaint, and that he has given public notices that the said several lots will be sold at his office for such pretended taxes.

That it is impossible to ascertain from any of the aforesaid

tax lists or delinquent lists, or from the public records of said city, or in any other manner, the amount of taxes justly due and chargeable upon the said several lots of land for either of the years 1854, 1855, 1856 and 1857; and that a reassessment of the property of the said city, and a readjustment of the taxes for each of said years, are necessary in order to ascertain such amounts.

That there is included in the taxes levied for each of the aforesaid years, and reassessed or claimed to be reassessed, under the provisions of said act, large sums which were appropriated in the manner set forth in said complaint; and also that there is included in the taxes levied for each of the aforesaid years, excepting the year 1854, the amounts misapplied by the common council of said city and paid from the treasury of said city for the purchase of a fire-engine and ground for engine house, and fraudulently levied as a part of said taxes in the manner set forth in said complaint. The averments of the complaint on this subject are substantially as follows: 1. That the city charter required that no appropriation should be made without a vote of a majority of the members of the council in its favor, taken by ayes and noes, and entered among the proceedings of the council; that in each of the years from 1853 to 1858, inclusive, the council appropriated large sums of money in violation of said provision and without such vote so taken and entered, the amount of which said pretended appropriations was included in the city tax claimed by defendants to have been apportioned in said pretended tax lists for the years 1854, '55, '56 and '57 respectively; [here follows a specification of particular sums "pretended to have been appropriated" in this illegal manner, amounting, for the year 1854, to $1,222.37; for 1855, to $3.47; for 1856, to $1,527.45; and for 1857, to $4,154.93, besides "a large sum of money to the Janesville Gas Light Company;" "all of which sums of money, and many others pretended to have been appropriated in the manner aforesaid, were paid."]

2. That by the second section of the city charter the council
is authorized to annually levy a tax upon all the taxable prop-
erty of said city, "and also an additional tax of *such sum as
they may deem necessary* for the repair and building of roads
and bridges and for the support of the poor;" that by the
third section of said chapter, "special taxes for purchasing fire
engines, cemetery grounds or public squares, or for improving
the same, may be voted at any regular or special meeting, but
no such vote shall be taken unless such tax be first recom-
mended by the common council, and a notice of the same,
specifying the purpose for which said tax is to be raised, and
the time and place for voting, be published at least ten days
before such meeting, in some newspaper in said city;" that in
the year 1855 the council appropriated $2,789.80 to pay for
two fire engines and hose, and $2,400 for the purchase of lots,
and the erection thereon of fire-engine houses; that these sums
were never levied as a special tax, in the manner required
by said section three, or in any other manner, but were appro-
priated and paid out of the moneys raised by taxes ostensibly
levied for other purposes; that said amounts were included in the
tax lists here in question; and that by these proceedings there
is charged upon all of plaintiff's said lots of land an amount
largely exceeding the amount properly chargeable thereon.

That the provisions of section twenty-seven of said act are
unconstitutional, and that in particular they are in violation of
the provisions of section nine, article one of the constitution
of the state of Wisconsin.

That said act never was passed in either house of the legis-
lature in the manner required by the provisions of section
eight of article eight of the constitution of this state; that in
neither of said houses was the question of the passage of said
act taken by ayes and noes, duly entered on its journal or
otherwise, nor was there present in either of said houses, at the
time of said pretended passage, a quorum of three-fifths of the
members elected to said house.

That the aforesaid proceedings on the part of the city and its officers create an apparent cloud upon the title of the plaintiff to said lots.

That the tax lists mentioned in the complaint, and all the proceedings of the city and its officers for the reassessment of the taxes for 1854, 1855, 1856 and 1857, upon the plaintiff's said lands or any of them, pretending to be in pursuance of the act above named, are irregular, illegal, wrongful and void; and that plaintiff is entitled to the injunction asked, etc.

From the judgment in favor of the plaintiff, the defendant appealed.

*J. W. Sale*, for appellant, argued that it appears from the finding that there are taxes still equitably due and unpaid upon the lots and lands mentioned in the complaint, for the years 1855, '56 and '57, which taxes were reassessed under ch. 48, Supp. to P. & L. Laws of 1862; and that the plaintiff could not maintain this action because he had not paid to the city treasurer "the amount of all taxes remaining unpaid" on the lands in question, as required by sec. 27 of said act. *Wakeley v. Mohr*, 15 Wis., 609; *Wakeley v. Nicholas*, 16 id., 588; *Hope v. Sawyer*, 14 Ill., 254; *Byington v. Rider*, 9 Iowa, 566; *Coney v. Owen*, 6 Watts, 435.

*Cassoday & Merrill*, for respondent, argued, 1. That ch. 48, Supp. to P. & L. Laws of 1862, was not a valid act, because, although the taxes sought to be reassessed included several thousand dollars of *state* tax, the question upon the passage of the act was not taken by yeas and nays in either house of the legislature, nor entered upon the journals, and a quorum of three-fifths of the members elected was not present in either house at the time of its pretended passage. Cons. of Wis., art. VIII, sec. 8, and art. IV, sec. 10; Cooley's Cons. Lim., 140, 141, 176, 177; *State ex rel. Rogers v. Judge, etc.*, 11 Wis., 54; *McKoan v. Devries*, 3 Barb. S. C., 196; *Attorney General v. Brunst*, 3 Wis., 793. The fact that the taxes in question included *state* taxes takes the case out of the exceptions men-

tioned in *Bushnell v. Beloit*, 10 Wis., 228, and *Watertown v. Cady*, 20 id., 503. Since these taxes could not be enforced, and the lands in question could not have been sold for their collection, prior to the enactment of said ch. 48, and since that chapter, if it had been legally enacted, would have "imposed, continued or renewed a tax, or created a debt or charge" on the lots in question, said act could be legally passed only in the manner prescribed. The chapter (sec. 30) not only purports to make the unpaid taxes for those years liens on the land, but also "all costs, charges and interest imposed by the provisions" of said chapter. "Taxes are debts due to the government, and when *charged* on lands, the lands constitute a fund out of which they are to be paid." *Curtis v. Brown Co.*, 22 Wis., 171. "A tax is no debt until it is assessed and demanded; and if not legally assessed, it is the same as if never assessed at all." *Libby v. Burnham*, 15 Mass., 148. A lien is a charge, an incumbrance, or, in the language of this court, a "burden" imposed. *Curtis v. Brown Co., supra.* 2. Sec. 27 of said ch. 48, which requires absolute payment of all the taxes illegally assessed before the party injured can maintain such an action as the present, is in violation of sec. 9, art. I of the constitution of this state. *Weller v. St. Paul*, 5 Minn., 95; *Wilson v. McKenna*, 52 Ill., 43, 48; *Hart v. Henderson*, 17 Mich., 221–2; *Crane v. Janesville*, 20 Wis., 305. The case is not within the rule laid down in *Wakeley v. Mohr*, 15 Wis., 609, and *Wakeley v. Nicholas*, 16 id., 588, because in those cases the deposit was with the clerk, where it was under the control of the court, and where it was placed as a mere security. 3. The finding shows that these tax lists include large amounts appropriated by the council in violation of the charter. Ch. 48 nowhere attempts to *legalize* any of these appropriations, but merely provides for a *reassessment.* To render a reassessment of a tax valid, it should include only the valid portions of the original tax, or else the other portions should be legalized. 4. Even if the council, in making these appropriations, had complied with

secs. 2 and 3, ch. 5 of the charter, yet, as the power there granted was *unlimited*, and not for legitimate municipal purposes, it was in violation of sec. 3, art. XI of our state constitution, and therefore void. *Foster v. Kenosha*, 12 Wis., 616. 5. Even if ch. 48 had become a law, and if the previous illegal taxes had been legalized by it, still plaintiff would be entitled to an injunction for the failure of the city to proceed according to the provisions of that act. (1.) The inclusion of certain of plaintiff's lots with lots belonging to other persons, under one valuation, in 1856 and 1857, rendered the taxes on those lots illegal. *Crane v. Janesville*, 20 Wis., 305; *State ex rel. Roe v. Williston*, id., 228. (2.) The amount assessed against each lot or parcel of land was required to be stated in the tax list, assessment roll and notices mentioned in the act. But since the figures in the several lists, assessment rolls and notices are without significance or meaning (as the court has found), they are of no effect *Lawrence v. Fast*, 20 Ill., 338; *Potwin v. Oudes*, 45 id., 366; *Lane v. Bommelmann*, 21 id., 147; *Dukes v. Rowley*, 24 id., 210; *Woods v. Freeman*, 1 Wall., 398. The meaning of the figures could not be proved by parol, nor could any word or sign be added. *Curtis v. Brown Co.*, 22 Wis., 170. (3.) The failure to give the notices required by the act renders all the proceedings to collect the tax invalid. "Notice is of the essence of the thing required to be done." Blackw. T. T., 213; *Rogers v. Milwaukee*, 13 Wis., 610; *Myrick v. La Crosse*, 17 id., 444–6; *Jarvis v. Silliman*, 21 id., 601. (4.) The illegal addition of fifty cents to the tax on each lot would render a sale void. *Kimball v. Ballard*, 19 Wis., 601; *Warner v. Outagamie Co.*, id., 611; *Pierce v. Schutt*, 20 id., 423. 6. Sec. 10 of said ch. 48 requires the treasurer to collect the unpaid taxes out of the *personal property* of the delinquent wherever found in the county; and the court finds that plaintiff had personal property more than sufficient for the purpose, open to access in said city. It would be illegal to pass by this property and arbitrarily sell the land. Blackw. T. T., 176–7; *Jackson v. Shepard*, 7 Cow.,

89; *Parker v. Rule's Lessee*, 9 Cranch, 69, 70 ; *Bowen v. Dono-van*, 32 Ind., 379; *Ellis v. Kenyon*, 25 id., 134; *Catterlin v. Douglass*, 17 id., 213. An injunction will be granted when-ever the sale would be illegal. Blackw., 485. 7. Sec. 25 of said ch. 48, by its terms, made the tax deed, when recorded, *conclusive* evidence. *Huey v. Van Wie*, 23 Wis., 613. Plaintiff would therefore have no *legal* remedy for any of the defects spoken of. Courts of equity always take jurisdiction where a plain, adequate and complete remedy cannot be had at law. 1 Story's Eq. Jur., § 33. This is peculiarly so when taxing officers act wrongfully or exceed their authority. *Lefferts v. Calumet*, 21 Wis., 688, 692–3 ; Blackw. T. T., 481.

The following opinion was filed at the January term, 1873.

DIXON, C. J. It is contended for the plaintiff that the act, chapter 48, Supplement to Private and Local Laws of 1862, entitled " an act to provide for the assessment of taxes in the city of Janesville for the years 1854, 1855, 1856 and 1857," is void, because the vote on its passage was not taken by yeas and nays, and because there were not three-fifths of the members of each house present at the time of its passage, according to the provisions of section 8, art. VIII of the constitution. That section requires the vote to be so taken, and declares that three-fifth of all the members elected to each house shall in all cases be necessary to constitute a quorum therein, " on the passage, in either house of the legislature, of any law which imposes cus-toms or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money, or releases, discharges or commutes a claim or demand of the state."

It has been decided by this court that the tax spoken of in this section of the constitution is a state tax, or one for the sup-port of the government of the state and to supply its treasury with funds, as distinguished from a local tax or a tax for any other purpose. *Watertown v. Cady*, 20 Wis., 501; *Bushnell v. Beloit*, 10

Wis., 228. But it is said that the act under consideration imposed, continued or renewed, among others, the state taxes for the years in question upon the *City of Janesville*, or those parts of those taxes which, for those years respectively, were apportioned against the city or the taxable property in it, as its share, or the share of its citizens, of the necessary public burden in defraying the expenses of the state government for the year when each apportionment was made. The collection of all or of a large portion of the taxes for those years had failed within the city, by reason of a constitutional defect in the charter providing for the local assessment, and which violated the rule of uniformity prescribed by the constitution. *Knowlton v. Supervisors of Rock County*, 9 Wis., 410. The act in question was passed to remedy the defect, and its validity on general constitutional principles was affirmed in the case of *Tallman v. The City of Janesville*, 17 Wis., 71. See also *Cross v. Milwaukee*, 19 Wis., 509.

But now comes this new objection, which must also be held unavailing. The act is not a law which imposes, continues or renews a tax, in the sense of the constitution. Those words refer to a general state tax imposed, continued or renewed. The taxes in question were not imposed, continued or renewed by the act. They were imposed, and lawfully so, upon the city, or the taxable property in it, at the several times when the state taxes were levied for the respective years named in the act; and, being so imposed, they continued a lawful public burden upon the city, or the taxable property in it, until they were paid, and required no legislative action renewing them in order to enforce their collection. The act in question did not renew them, but merely provided the necessary machinery or means in the law for ascertaining the just and proper proportion of them which each property owner in the city should pay, and for compelling such payment. When it is viewed in this light, which we regard the only correct one, the objection of counsel falls to the ground.

Another objection, also of a constitutional kind, is, that section 27 of the act is invalid because it violates the provisions of section 9, art. I of the constitution. The provisions of said section 27 are set forth by the reporter, *supra*. Article 9 of the declaration of rights is that which declares that " every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

The position assumed in support of this objection is, that the act requires the payment of all taxes, whether they are such as are inherently unjust and inequitable, or are such only as have been merely irregularly assessed, and against which, or the sum demanded of him, the taxpayer can make no opposition upon equitable grounds, but must stand on those which are directly legal and technical in their nature. We do not think the act is susceptible of the construction attempted to be put upon it by counsel, or that it was intended to operate so as to deny the remedy unless the taxes are paid, where they are inherently vicious and wrong and against the equitable rights of the property owner of whom they are claimed. So construed, the act would undoubtedly be obnoxious to the constitutional objection raised by counsel. But such is not the construction of the act, the aim of which evidently was to cut off the remedy when sought on grounds of irregularity merely. This appears from the words, " whether such taxes have been *regularly* assessed or not; " and again from the provision requiring the action to be dismissed when it is shown that the amount paid " is not the full amount of taxes *justly* chargeable upon such lands." The question presented differs not, therefore, from that involved in *Wakeley v. Mohr*, 15 Wis., 609, and *Wakeley v. Nicholas*, 16 Wis., 588; except it may be that this act is more plain, or less difficult of exposition upon the point in question, than the act there under consideration.

It follows that this action should have been dismissed for the omission of the plaintiff to pay the taxes assessed upon his several lots and parcels of land described in the complaint, wherever such assessments were not shown to have been void on the merits, or unjust and wrong in principle, upon particular lots and parcels. An examination of the pleadings, findings and judgment in the court below fails to establish that such was the character of the taxes assessed upon all the lots. A proper construction of the statute we have just been considering, undoubtedly requires the action to be dismissed whenever relief is sought with respect to several parcels of land, and it appears that the taxes assessed upon one or more are such as ought to have been paid by the plaintiff but have not been. The owner of fifty separate lots cannot take advantage of an unjust and inequitable assessment of taxes upon ten of them, for the purpose of obtaining an injunction restraining the collection of taxes against which no such objection exists, assessed upon the other forty lots. If it be found, on the trial, that the taxes upon any of the lots are such as should have been paid but have not, the action must be dismissed. This would be the rule under the statute, though a different one might prevail in equity without it.

Many of the objections taken to the taxes are purely legal and technical, and such as afford no ground of relief in equity. Of this kind (among numerous other appropriations similarly made and to which the same objections are taken), is the objection that the common council did not vote by yeas and nays in the appropriation of moneys to purchase ground for an engine house, and for the purchase of a fire engine ; also those to the form and sufficiency of the notices, the omission of the ($) dollar sign, etc. ; and likewise that to the unlawful addition of fifty cents to the amount of taxes set opposite each lot. The illegal excess, being known and separable from the sum justly due, constitutes no excuse for the nonpayment of the latter, in a court of equity ; and the objections to the former are

such as go merely to the form of the proceedings, and do not affect or involve the substantial justice or equity of the appropriations themselves.

The finding "that in the tax lists, more than one lot or parcel of land were valued together, although at the time of such valuation they were not owned by the same person, or occupied as one parcel," contrary to the requirements of the first section of the act, would, if it extended to all the lots, entitle the plaintiff to an injunction, and to maintain his action, notwithstanding the nonpayment of any portion or all of the taxes. This is well settled. 20 Wis., 305 ; id., 228 ; 25 Wis., 490 ; id., 496. But the finding specifies but seven lots out of a much larger number described in the complaint, which were so assessed.

The finding that the state, county and city taxes, upon all the premises for the year 1854, were paid by or on behalf of the plaintiff, cannot affect the validity of the taxes reassessed for the subsequent years, or the amounts of such taxes. It has no tendency to show that such taxes were contrary to right and justice, or ought not to have been paid by the plaintiff.

The point that the collection of the taxes should now be perpetually restrained by decree, because the plaintiff escaped the payment of them at the time payment should have been made, either through the indulgence of the collector or by his omission to seize and sell the personal property of the plaintiff in satisfaction, however it might be in a suit at law, is certainly an unexpected one in equity. The delinquency of the officer cannot excuse that of the plaintiff, nor dispense with the rule that he who asks equity must do equity ; and we merely remark respecting the point, that in our judgment the powers of the court of chancery cannot be called into exercise upon any such ground.

*By the Court.* — The judgment is reversed, and the cause remanded with direction to dismiss the complaint.

LYON, J., did not sit in this case, having presided at the trial in the circuit court.

A motion for a rehearing was denied at the June term, 1873.