Bass vs. Fond du Lac County and another.

*April 15 — May 15, 1884.*

*Taxation — Lack of affidavit to assessment roll — Reassessment.*

1. The absence of the affidavit of the assessor to the assessment roll (required by sec. 1063, R. S.), is merely *prima facie* evidence of the inequality or injustice of the assessment, which may be overcome by proof to the contrary.

2. Under sec. 1186, R. S., the county board may reassess a tax and "fix the amount of such tax justly chargeable" upon the land, without a relisting or revaluation, although the original assessment roll did not have annexed thereto the affidavit required by sec. 1063, R. S.

APPEAL from the County Court of *Fond du Lac* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an action to enjoin the sale of lands of the plaintiff for reassessed taxes. The plaintiff was the owner of lots 7 and 16, in block V, in Darling's addition in the First ward of the city of Fond du Lac; also lot 10 in H. B. Fargo's second addition in the Second ward of the city. Lots 7 and 10 purported to be assessed for general taxation in 1876 and 1877, and lot 10 likewise in 1875, 1876, and 1877; and in due course all of them were returned delinquent for those years, respectively, and sold, and the certificates issued to the purchasers thereon. On December 31, 1878, while the certifi-

---

[1] See note to this case in 23 Am. Law Reg., 673.— REP.

cates were still outstanding, the county board passed this resolution:

" ' *Resolved,* by this board, that the clerk be, and he is hereby, instructed to cancel the tax certificates presented to this board, upon which suits have been commenced, and to charge back to the towns and wards the original tax belonging to such town or ward, in accordance with the statute; and that the different town clerks and city clerks be instructed to order the assessors to reassess such tax back upon the property upon which it originated.'

"Accordingly, the said certificates on the plantiff's lots were canceled, and the moneys realized upon such sales, with interest, were thereupon refunded to the holders of said certificates so canceled, as required by law, and accepted by them, and on November 24, 1879, the county board passed the following resolutions, to wit:

" '1. *Resolved,* by the county board of supervisors of *Fond du Lac* county, that said board is satisfied, upon due examination of the matter, that lands described in the annexed and foregoing lists, and each several tract, lot, or parcel in such list named, was and were severally and properly taxable for the tax levied on each piece, lot, or parcel of land, and for the whole thereof, in each instance, in the several years preceding the year of sale of each such parcel of land for the years named in such lists.

" '2. *Resolved,* that the board does hereby fix upon the sum set opposite each several description of said lands in said lists, as the proper sum to be paid by each such tract, lot, piece, or parcel of land, which sum includes interest in each case at the rate of ten per cent. per annum, from the time when such tax was due and payable to the end of the year in which such tax will be levied, severally, and as to each described lands; and that the sum set opposite each description of lands is the sum justly chargeable to each piece of such land for such tax.

" '3. *Resolved*, that the county clerk, in his next appor-, tionment of county taxes, charge the said sums in said lists; as a special tax to the towns, city, or village, as the case may be, in which such lands are situated; and that he spec-; ify the particular tracts of land upon which the same are to be assessed, and the amount chargeable to each parcel, etc.,; etc., as provided by sec. 1186 of the Revised Statutes of the state of Wisconsin.

" '4. *Resolved*, that each, any, and all resolutions, orders,; or actions of the board of supervisors of said county, of what-; ever name, heretofore made, passed, or adopted, conflicting with or providing for any other or different method of dis-; position of or action upon the matters embraced in the fore- going resolutions, be and they are hereby abrogated,; annulled, canceled, and rescinded, so far as they are in con-; flict with the foregoing resolutions, or any of them.'

" Annexed to said resolutions was, when the same were passed, a list therein referred to, which list embraced the lands and lots described in the complaint, and for the; amounts in the complaint stated. The amounts so named; and specified were the amounts required in each case and as to each tract, and interest thereon at the rate of ten per; cent. per annum from the time when such tax was due and payable to the end of the year 1879.

" Pursuant to these proceedings, the amounts entered in the schedule to the second resolution against the plaintiff's parcels, were entered against those parcels, respectively, in; the tax roll of 1879, in addition to the general taxes of that year. The years in which the original taxes, out of which these amounts grew, originated, were noted beside them in the tax roll of 1879; but there was nothing else to indicate the meaning of the entries, save that the column in which the dates and amounts were entered was headed 'Ward Tax.'

" The general taxes of 1879 on lots 7 and 16 were paid to:

the city treasurer before he made his return·to the county treasurer, and those on lot 10 were paid to the county treasurer after return and before sale. The amounts above mentioned are certified down to the city clerk; and those amounts only were not paid, and the lots were returned delinquent therefor in the spring of 1880.

"The county treasurer included the plaintiff's lots in the list of lands advertised by him to be sold for taxes at the annual sale of May 11, 1880, but this notice of the sale specified only 'the taxes for the year 1879' as those which it was the object of the sale to raise.

"This action was begun on May 10, 1880, to restrain the sale of the plaintiff's lots as advertised, and to enjoin perpetually the collection of the amounts for which they had been returned as delinquent. The cause was tried October 11, 1881. The facts and proceedings detailed above were proved or stipulated. The plaintiff also proved (1) that the original assessment roll of the First ward of Fond du Lac, embracing lots 7 and 16, for 1877, was not verified by any assessor's affidavit, but was accompanied merely by a 'certificate' signed by all the assessors of the city for that year, as follows: 'We, the undersigned board of assessors, hereby approve and indorse the annexed assessment roll of real and personal property;' (2) that the original assessment rolls of the Second ward (embracing lot 10), for 1876 and 1877, were likewise unverified, but 'certified;' (3) that the assessment rolls of sundry other wards of the city (not embracing any of the property in suit), in all three of the years in question,— 1875, 1876, and 1877,—were similarly unverified, but certified by the assessors as above; (4) that the assessment rolls of sundry towns in *Fond du Lac* county (not embracing any of the property in suit), in all three of said years, were likewise destitute of assessors' affidavits; (5) that the revised and consolidated charter of Fond du Lac, passed in 1879 (Laws of 1879, ch. 240), omitted to designate any portion

of its territory as the Second ward; and that the plaintiff's lot 10 was situated in that part of the entire territory of the city not parceled off by the charter as its other seven wards.

"The defendant proved (1) that the portion of the city's territory not assigned by the charter of 1879 to its other wards had been the Second ward prior to the charter of 1879, and was known as such; that in 1879 the common council so designated it by ordinance, and in 1880 the charter was amended to the same effect; and that it was treated as the Second ward in the elections and proceedings of 1879; (2) that the reassessed taxes certified down to the city clerk in 1879 (as above set forth) were entered in the 'ward tax' column of the tax roll, because the roll had been printed according to an old form in use when separate 'ward taxes' had been authorized; but there were no ward taxes in 1879, and the column in question was not used that year except for the entry of the reassessed taxes. (3) The defendant also examined one of the assessors of Fond du Lac for 1876 and 1877, to explain away the non-verification of the assessment rolls of the Second ward for those years, and his testimony was to the effect that the assessors all signed what they supposed to be an affidavit to the several assessment rolls, but which turned out to be mere certificates; and that each and all of the assessors approved the several assessment rolls as correct; and that the omission to annex the affidavits was purely accidental.

"On the trial the court found the facts stated in the answer to be true; that the delinquent taxes for the several years in question had never been paid; that the reassessment of the same was regular and valid; and ordered judgment dismissing the complaint."

From the judgment entered accordingly the plaintiff appealed.

For the appellant there were briefs signed by *Shepard & Shepard*, and oral argument by *T. R. Shepard*. They con-

tended, *inter alia*, that there was no valid basis for any of the original taxes reassessed, because the proper affidavits by the assessors were not annexed to the assessment roll. *Marsh v. Supervisors*, 42 Wis., 502. And the reassessments were therefore void. *Dean v. Borchsenius*, 30 Wis., 236; *Dean v. Charlton*, 23 id., 590; *S. C.*, 27 id., 522; *Hamilton v. Fond du Lac*, 25 id., 490; *Dill v. Roberts*, 30 id., 178; Cooley on Taxation, 227, 232–3. The county board had no power in such a case to make a reassessment.

*William F. Vilas*, for the respondents.

CASSODAY, J. The objection to the original assessments, which it is claimed rendered them respectively illegal, was the absence of the requisite affidavit of the assessor in some of the wards of the city or towns of the county. R. S., sec. 1063; *Power v. Kindschi*, 58 Wis., 540. Assuming that the defects existed, yet they, at most, necessitated a reassessment of the taxes for the years in question. It is now claimed, in effect, that the absence of such affidavits raised a conclusive presumption, never to be overcome by any examination, that each of such assessments was unequal and unjust, and not in accordance with the rule of uniformity, and hence could not be used or adopted as a basis of reassessment, and *Marsh v. Supervisors*, 42 Wis., 502, is relied upon in support of this contention. The very vigorous and forcible language of the late chief justice, in the opinion in that case, may have induced an inference not warranted by the decision itself. Those expressions, however, were more directly aimed at the inequality which was there actually made manifest; for, according to the opinion, the court " were at first disposed to express a doubt" whether, when the affidavit is omitted by accident, evidence might not be given to supply its place, in support of an assessment made in good faith and otherwise in the manner prescribed by the statute. But it was finally held that the affidavit was the evidence, and the only evi-

dence, accompanying the assessment, that values had been arrived at justly and properly in compliance with the statute and to fulfil the rule of the constitution, and hence that an assessor's failure to make the requisite affidavit impeached the integrity of his own assessment. In another place the opinion states that "the statute does not authorize an unverified, return, and the assessment roll is *prima facie* positively valid or void *when returned*." This, we think, does not authorize the conclusion insisted upon, but merely that the absence of the affidavit is *prima facie* evidence that such assessment was unequal, unjust, and without uniformity. The absence of such affidavit being merely *prima facie* evidence of such inequality, was liable to be overcome, and the justice and uniformity of the first assessment established.

The statute during the time in question, and now, in effect, makes it the duty of the county board, in case it is discovered, within six years from the day of sale of any lands or lots for the nonpayment of taxes, that the sale or certificate issued thereon is invalid, to make an order briefly stating the reason therefor, and directing the money paid for such certificate on the sale, and all subsequent charges, etc., paid by the purchaser, or his assigns, to be refunded, with interest, upon the delivery of the certificate to be canceled. R. S., secs. 1182, 1184. All these things appear to have been done as to each sale and certificate before us. On making such order directing the refunding of money on account of the invalidity of any tax certificate, as above provided, then the statute, during the time in question, and now, makes it the duty of the county board, in case they are satisfied that such lots were justly taxable for such tax, or some portion thereof, to fix the amount of such tax justly chargeable thereon on each parcel thereof, and direct the same to be assessed in the next assessment of county taxes, with interest thereon at the rate of ten per cent. per annum from the time when such tax was due and payable, to the end of the year in which such

tax is levied; and the county clerk, in his next apportion-
ment of county taxes, is required to charge the same as a
special tax to the town or city in which such lands are situ-
ated, specifying the particular tract of land upon which the
same are to be assessed, and the amount chargeable to each
parcel, and the year when the original tax was assessed, and
certify the same to the clerk of the proper town or city; and
the clerk receiving such certificate is required to enter the
same on the tax roll accordingly. R. S., sec. 1186. Each of
these requirements seems to have been complied with in the
case before us.

The contention is that the county board had no power
under that section to "fix the amount of such tax justly
chargeable" upon such lots, respectively, by reason of the
absence of the requisite affidavits from the original assess-
ment rolls in some of the wards of the city and some of the
towns of the county, and without any new assessment roll
made upon a relisting and revaluation of the land, and hence
a new apportionment by new assessors, etc. We do not
think the objections are well taken. The legislature is not
bound by any constitutional provision to require such veri-
fied assessment as a condition precedent in any case. It
may, in its discretion, dispense with such affidavit entirely.
*Plumer v. Supervisors*, 46 Wis., 178. Certainly, no such
affidavit is required to be attached to the reassessment made
under sec. 1186 or sec. 1087, R. S. The argument, of course,
is that neither of those sections authorizes such reassess-
ment when there is no such affidavit attached to the original
assessment roll. But this court has recently held that a de-
fective verification of the assessment by the assessor did not
impeach the justice or equity of the tax, so as to prevent a
reassessment under either of those sections. *Kaehler v.
Dobberpuhl*, 56 Wis., 481. It simply impairs, or rather takes
away, the *prima facie* evidence of its justice and equity.
But, whether it is just and equitable or not, still depends

upon the fact, rather than a particular kind of evidence of the fact. The power of the county board to authorize the refunding of the money and the cancellation of the certificate, depends upon the discovery of the fact that the sale, or the certificate issued thereon, was invalid. Such discovery, followed by such refunding and cancellation, gives to the board the right to reassess under sec. 1186 only when the board is satisfied that the lands described in the certificate were justly taxable for such tax, or some portion thereof. The statute furnishes no prescribed method, and requires no particular kind of evidence, by which the board are thus to become satisfied. Being unrestricted, the investigation may undoubtedly be conducted by the board to suit themselves. Just what investigation was made, and just what evidence was present before the board, of course, does not appear. The members of the board may have made personal investigation. For aught that appears they may have taken the testimony of each of the assessors who made the original assessment rolls, and such assessors may each have sworn to all that the statute required to be stated in such affidavits. In the absence of any proof of inequality or injustice, it is enough to know that the board was satisfied that the lots in question, respectively, were justly taxable for such tax. For that purpose the board is a taxing tribunal, invested with certain discretionary powers of investigation and determination, for the purpose of enforcing a public debt justly chargeable to particular parcels of land which have unjustly escaped such burden in consequence of some informality, irregularity, or omission in the statutory requirements. The omission of the assessor's affidavit, where the assessment is made in good faith and otherwise according to the statute, is such an irregularity. Where, as here, there is such a reassessment in consequence of such an omission, the tax-payer will not be allowed to interfere and restrain the collection of the tax without offering to pay the tax, or

showing its injustice or inequality, or that it is sought to be imposed in violation of law.

*By the Court.*— The judgment of the county court is affirmed.