## FIFIELD VS. MARINETTE COUNTY, imp.
## BEEBE VS. SAME.

*February 11 — March 3, 1885.*

TAXATION: EQUITY. *(1, 2) Irregularities in tax proceedings: Injunction: Conditions of relief: Requisites of complaint. (3) Objection to sufficiency of complaint, when taken. (4) Failure to verify assessment roll.*

1. A court of equity will not set aside or enjoin the collection of a tax for mere irregularities in the tax proceedings, unless the taxes justly chargeable to the property are first paid or tendered in all cases where such taxes are ascertainable.

2. A complaint which does not allege in direct terms the injustice and inequality of the tax, and further allege a state of facts which, if proved on the trial, would establish the truth of the general allegation of its injustice, does not state a cause of action for equitable relief, unless there be a further allegation of an offer to pay the taxes justly chargeable to the property of the plaintiff on account of which he seeks relief.

3. The objection to the sufficiency of the complaint in such a case may be taken after judgment, on appeal, although there was no appearance on behalf of the defendant in the trial court. *Potter v. Brown Co.* 56 Wis. 272, distinguished.

4. The mere failure of the assessor to verify the assessment roll as required by law, does not necessarily render the taxes apportioned upon such assessment unequal or unjust. Language used in *Marsh v. Supervisors,* 42 Wis. 517, criticised.

APPEALS from the Circuit Court for *Marinette* County. The case is stated in the opinion.

*H. O. Fairchild,* for the appellant.

For the respondent there was a brief by *Webster & Brazeau,* and oral argument by *Mr. Webster.*

TAYLOR, J. These actions were commenced by the respondents for the purpose of setting aside certain tax certificates issued to the county upon sales of the respondents' lands for the nonpayment of taxes assessed thereon. The com-

plaints are alike in each case. There was no appearance of the appellant in either case, and judgment was entered in each case declaring all the tax certificates null and void, canceling the same, and perpetually enjoining the county from selling, assigning, or in any manner disposing of said certificates to any person or persons whatsoever, except that they may be delivered to the clerk of said county for cancellation, and also enjoining the issuing of any tax deed or deeds on said certificates to any person or persons, and for the costs of the action. From these judgments the county appeals to this court, and alleges as error that the complaints do not state facts sufficient to entitle the respondents to the judgments entered therein, and that the judgments are not supported by the facts found by the court.

The only finding of fact by the court is that the facts stated in the complaint are true. The only question, therefore, upon these appeals, is whether the facts stated in the complaints entitle the plaintiffs to the relief granted by the court. The facts stated in the complaints are as follows: (1) The ownership of the lands described in the complaints by the plaintiffs; (2) the corporate character of the county; (3) that the lands were returned as delinquent for the nonpayment of taxes attempted to be assessed thereon for 1881, to the county treasurer of said county, who advertised the same for sale for the nonpayment of such pretended taxes, and did thereafter in form sell the same at the sale of delinquent lands in his county in May, 1882; that upon such sale the treasurer issued certificates of sale of said lands to the county, and that such certificates of sale are a cloud upon the plaintiffs' title; (4) that such certificates are absolutely illegal and void, for the reason that there was no assessment of any of the lands described in said certificates, and as a reason for making this general allegation it is further alleged that the assessment rolls for the year 1881 of the towns in which the lands are situate, and in which said lands

were taxable in 1881, "were not signed by the assessor of the town whose roll it was, or in any way or manner verified by said assessor for the year 1881; that the rolls were confirmed by the respective boards of review of said towns in that condition, and adopted by said boards of review as the assessment rolls of said towns; and that all subsequent proceedings down to the sale were based upon such imperfect and incomplete assessment rolls."

It will be seen that there is not in the complaints any allegation that the taxes levied upon the plaintiffs' lands were illegal, unequal, or unjust; nor is there any allegation that the assessment rolls, which were, in fact, made and returned by the assessors and confirmed by the several boards of equalization, were not fairly and honestly made, nor that the property of the plaintiffs and other tax-payers was not fairly and equally assessed and valued upon such rolls. But it is claimed by the learned counsel for the respondents that the allegation that the assessment rolls were not verified by the assessors who made the same is equivalent to an allegation that the taxes levied· upon the lands of the plaintiffs are not only illegal, but unequal and unjust, and that a court of equity should therefore restrain their collection. It may be admitted that the allegation mentioned is equivalent to an allegation that the taxes levied and extended upon such an assessment are illegal in the sense that no valid title could be made under the tax proceedings by a sale of the plaintiffs' lands for the nonpayment of such taxes, if such sale was attacked in proper time by an action at law; but, certainly, such allegation does not demonstrate that the taxes extended upon such assessment are unequal, inequitable, or unjust. This court has, through a long course of decisions, held that the circuit courts could entertain an action in equity to remove a cloud brought upon title to real estate by irregular and therefore void proceedings in the assessment and levy of taxes, or in the sale of the lands for the non-

payment thereof; but it has also uniformly held that in all such cases, unless it was clearly shown that the illegal tax was also unequal, inequitable, and unjust,·relief would only be granted upon the condition that the irregular and illegal tax should be first paid.

In *Hart v. Smith*, 44 Wis. 217, speaking for a majority of the members of this court, I said: "It is not claimed that the allegations in the complaint bring this case within the case of *Marsh v. Supervisors*, 42 Wis. 502. There is no allegation that the assessment was unfair or unequal; nor is there any allegation of an omission to do any act which the law requires to be done, and which omission would tend to impair the general equality and uniformity of the assessment; nor is there any allegation showing that 'the groundwork of a valid tax is wanting.' In fact, the allegations in this complaint admit that there was a valid assessment and a valid tax equally apportioned upon the property of the plaintiff. We do not understand that the decisions of this court in the cases of *Philleo v. Hiles*, 42 Wis. 527; *Marsh v. Supervisors, supra;* and *Hersey v. Supervisors*, 37 Wis. 75, were intended to or have changed the rule which was established by this court as early as the case of *Mills v. Gleason*, 11 Wis. 470, that a court of equity will not interfere to declare a tax invalid and restrain its collection, unless the objections to the proceedings are such as to go to the very groundwork of the tax, and necessarily affect materially its principle, and show that it must necessarily be unjust and unequal. This rule has been adhered to and reiterated in the following cases: *Warden v. Supervisors*, 14 Wis. 618; *Kellogg v. Oshkosh*, id. 623; *Bond v. Kenosha*, 17 Wis. 284; *Miltimore v. Supervisors*, 15 Wis. 9; *Mitchell v. Milwaukee*, 18 Wis. 92; *Dean v. Gleason*, 16 Wis. 1; *Mills v. Johnson*, 17 Wis. 598; *Crane v. Janesville*, 20 Wis. 305; *Ballard v. Appleton*, 26 Wis. 67." To these cases may be added the following: *Arnold v. Supervisors*, 43 Wis. 627; *Whittaker*

*v. Janesville*, 33 Wis. 76; *Mills v. Charleton*, 29 Wis. 400; and *Kaehler v. Dobberpuhl*, 56 Wis. 480.

It was further said, in the case of *Hart v. Smith:* "Nor do we understand that the rule, long established in courts of equity, that he who seeks equity must do equity, is qualified or abrogated in favor of a party who seeks to remove a cloud upon his title to real estate by reason of illegal proceedings taken to enforce a valid tax assessed thereon, and that such party may demand as a right from a court of equity, that such cloud shall be removed, without his doing what justice and equity demand, that is, pay the tax. None of the cases in this court recognize any such right on the part of the plaintiff; and we think no such right exists. It would be a gross impeachment of the power of a court of equity to deny it the right to demand of its suitors good faith and common honesty before it shall be compelled to grant them any relief." What was said in the case of *Hart v. Smith* was reiterated and approved in *Kaehler v. Dobberpuhl*, 56 Wis. 483, and on page 486 it is said: "When a taxpayer undertakes to stop the officers of the law from collecting a tax charged against his property, by a proceeding in equity, he should be required to *demonstrate by his complaint that his property is not legally or equitably chargeable therewith.*" In this case the plaintiff sought to impeach, by her complaint, the justice and equity of a reassessed tax, and this court said: "Such reassessment must be deemed a proper and just reassessment until impeached by evidence tending to show that it was inequitable and unjust. The tax sale of 1870 was set aside because the town assessor had made an imperfect verification of his assessment, and for no other reason. This irregularity does not, we think, impeach the justice or equity of the tax assessed upon the plaintiff's land, and comes within the provisions of said section 1087, which authorizes a reassessment when the tax deed or tax sale is set aside."

The foregoing decisions of this court ought to settle the question in this state that a court of equity will not set aside or enjoin the collection of a tax for mere irregularities in the tax proceeding, except upon the condition that the taxes justly chargeable to the property of the plaintiff are first paid or tendered in all cases where such taxes are ascertainable.

In the cases at bar there is no complaint made that any illegal or unjust tax has been ordered to be levied upon the property of the plaintiffs; nor are there any sufficient allegations in the complaints showing that such legal taxes ordered to be levied on the property of the towns in which their lands are situate, have not been fairly and justly apportioned upon the real and personal property subject to taxation in such towns. Why, then, should a court of equity relieve the plaintiffs from the payment of such taxes? The only reason urged for so doing is that the assessor omitted to verify his assessment roll. Whether such omission occurred through mere inadvertence, or whether it was done designedly, does not appear from the complaint. But it is urged by the learned counsel for the respondents that the omission of the assessor to verify his assessment roll is conclusive, or, if not conclusive, presumptive, evidence that the assessment is unequal and unjust, and that every tax apportioned upon such unverified assessment roll must therefore be deemed unequal and unjust, and so ought to be set aside by a court of equity without any tender on the part of the plaintiff, because there is no way of determining what amount of tax the plaintiffs ought in justice to pay. The contention of the learned attorney is based mainly upon what was said by the late learned chief justice in *Marsh v. Supervisors*, 42 Wis. 502. It must be admitted that the learned chief justice made use of language in that case which fully justifies his contention in the cases at bar; but if we look into the facts which were before the court in

that case, it will be seen that there was no necessity for a discussion of the question whether a mere omission of an assessor to verify his assessment roll rendered the tax apportioned upon such assessment roll unequal and necessarily unjust.

The evidence in that case showed that in making the unverified assessment rolls involved in that case, the assessors had proceeded in such a way as to necessarily make the assessment unequal.   All the rules established by law to govern the assessment of property had been violated, and one of the assessors testified on the trial that he could not make the oath required by law, because, if he made it, he would be guilty of perjury.   In that state of the evidence it was wholly unnecessary for the court to determine what would be the effect of a mere omission to verify the assessment roll.   This is plainly admitted by the learned chief justice on page 518, where he says: "We may remark that had we not come to this conclusion we should have found no difficulty in holding void the assessments in question here, under the rule of *Hersey v. Supervisors,* 37 Wis. 75.   The whole process of the assessors is clearly shown, by their own testimony, to have been a fraud upon the statute."   The learned chief justice went so far as to hold that the mere absence of the verification would necessarily render the tax inequitable and unjust, although it had been in fact made by the assessor, and he had intended to attach it to the roll, but by inadvertence it was not so attached.   See page 517.   If what was said on the page last cited was intended to prove the tax illegal because the verification was not attached to the roll, it is undoubtedly good law; but if it was said for the purpose of showing that a tax apportioned upon such assessment is necessarily unequal and unjust, the argument is, to to my mind, wholly inconclusive.   The learned counsel for the appellants, in the case of *Marsh v. Supervisors,* do not seem to have given much importance to the fact that the as-

sessment rolls were not verified, and the only case referred to by them in support of this objection is *Van Rensselaer v. Witbeck*, 7 N. Y. 517, which was an action of trespass by the tax-payer against the tax collector for seizing the plaintiff's property to satisfy the tax; and it was held that the defect appearing on the tax roll in the hands of the collector to which his tax warrant was attached, such roll and warrant were no defense to the plaintiff's action.   Many other cases to the same effect may be found in the reports of the different states, but, so far as I have been able to ascertain, the question was always considered in · actions at law, and not in an equitable action to avoid the payment of the tax.

If there was anything decided by this court in the case of *Marsh v. Supervisors, supra; Philleo v. Hiles*, 42 Wis. 527; *Tierney v. Union Lumbering Co.* 47 Wis. 248; *Plumer v. Supervisors*, 46 Wis. 163; *Schettler v. Fort Howard*, 43 Wis. 48; and *Goff v. Supervisors*, id. 55, which is in apparent conflict with the long line of decisions of this court previous to the decision of *Marsh v. Supervisors*, or with the decisions in the cases of *Hart v. Smith, Kaehler v. Dobberpuhl, supra,* and *Bass v. Fond du Lac*, 60 Wis. 516, made subsequently, the apparent enlargement of the rule in equity by this court in those cases should not be followed, in view of the fact that immediately after the publication of those decisions the legislature promptly intervened, not only to reestablish the former rule but made provision for extending the rule to cases which were not covered by it, by the enactment of sec. 1210*b*, R. S. 1878, and the amendment of such section by ch. 255, Laws of 1879, and ch. 128, Laws of 1881. The object of this legislation has been approved by this court, and its effect is to compel every tax-payer who comes into a court of equity to avoid his taxes for any cause, to first pay such taxes on his property as he ought in justice to pay, and it provides the machinery for ascertaining what such taxes are, and compels him to pay them before any re-

lief shall be granted. See *Bradley v. Lincoln Co.* 60 Wis. 71, 74.

If, in the case at bar, the plaintiffs had alleged any facts which affected the groundwork of the tax, and which affected all the property in any town, they would not have been entitled to any relief until steps had been taken to ascertain by reassessment what taxes they ought in justice to pay, and until they had paid them. Why, then, should they have relief upon an allegation of fact which does not necessarily show that the taxes charged against them are unequal or unjust? It may be urged against this view of the case, that, there having been no appearance on the part of the defendants, the plaintiffs are entitled to the equitable relief asked in their complaint, without any ascertainment of the amount of taxes they ought in justice to pay, under the provisions of sec. 1210*b* as amended. See *Potter v. Brown Co.* 56 Wis. 272. The answer to that argument is that the complaint does not, on its face, as was done in the case of *Potter v. Brown Co.*, state facts sufficient to constitute a cause of action for equitable relief, except upon a payment of the taxes levied upon these lands as a condition precedent to such relief, and therefore no appearance was necessary on the part of the defendants, as advantage may be taken of that defect as well after as before judgment.

As the law now stands, if these plaintiffs had paid their taxes under protest, or allowed their property to be sold to pay the same, and then had brought an action at law to recover the same back from the towns or county, and it had been held that the assessments made were incurably illegal, still, under sec. 1164*a*, R. S., as amended by ch. 255, Laws of 1879, and ch. 132, Laws of 1881, they would not have been entitled to collect the judgment rendered in their favor until there had been deducted therefrom the amount of their equitable and just share of the taxes which ought to have been levied thereon.

In the cases at bar there is no allegation which tends to show that any of the state, county, town, or other taxes ordered to be levied upon the property, real and personal, in said towns, was illegal, nor is there any allegation that the property of the plaintiffs in said towns was not subject to taxation. If, therefore, there was anything unlawful or inequitable in the tax proceedings, it was in the apportionment of the lawful taxes upon the property of the tax-payers of said towns. In order to impeach the justice and fairness of such apportionment, it was necessary to show by proper allegations that the valuation or assessment of the taxable property in the towns was not only in fact unequal and unjust, but that it was purposely and fraudulently made so by the acts of the assessors, or of the boards of review. Honest mistakes of judgment, either on the part of the assessors or of the boards of review, which might render the apportionment unequal in fact, would not even render the tax proceedings illegal or void at law, much less in an equitable action to avoid the entire tax. *Marshall v. Benson,* 48 Wis. 558; *Salscheider v. Fort Howard,* 45 Wis. 519; *Dean v. Gleason,* 16 Wis. 1; *Weeks v. Milwaukee,* 10 Wis. 242; *Smith v. Smith,* 19 Wis. 615. We must hold, therefore, that a complaint which does not allege in direct terms the injustice and inequality of the tax assessed upon the plaintiffs' lands, and further allege a state of facts which, if proved on the trial, would establish the truth of the general allegation of its injustice, does not state facts sufficient to constitute a cause of action for equitable relief, unless there be a further allegation of an offer to pay the taxes justly chargeable to the property of the plaintiff on account of which he seeks relief.

Our views as expressed in this opinion are fully sustained by the supreme courts of Nebraska and Kansas in the following cases: *Wood v. Helmer,* 10 Neb. 65, 75; *Boeck v. Merriam,* id. 199; *Hunt v. Easterday,* id. 165; *Southard v.*

*Dorrington,* id. 119; *Challiss v. Commissioners,* 15 Kan. 49; *McNish v. Perrine,* 14 Neb. 582. The cases of *Wood v. Helmer, Hunt v. Easterday,* and *Challiss v. Commissioners* were all equitable actions brought by the tax-payers to avoid the tax, and as a ground for relief it was alleged in each case that the assessor had failed to verify the assessment roll as required by law. In the case of *Wood v. Helmer,* Chief Justice MAXWELL, after an elaborate argument of the question and the citation of many authorities, arrived at the same conclusion we have reached in these cases. It was held by the court in that case that the mere neglect of the assessor to·verify his roll as required by law did not necessarily render the taxes apportioned upon such assessment unequal or unjust, and was not, therefore, a sufficient reason for granting the tax-payer equitable relief, unless he first tendered the tax levied upon his land. The conclusion reached in the cases at bar is in accord with the legislative policy of the state, and we think it is also in accord with the public welfare.

*By the Court.*— The judgment of the circuit court in each case is reversed, and the cause remanded for further proceedings.