94  503
96  121

DAY and another, Respondents, vs. THE TOWN OF PELICAN, Appellant.

*November 9 — December 15, 1896.*

*Taxation: Recovery of illegal tax: Equity: Logs and timber:* Situs *for taxation: Manufactured product.*

1. Under sec. 1164, S. & B. Ann. Stats. (giving any person who has paid an unlawful tax the right to recover from the municipality all moneys so unlawfully levied and collected, and providing that no action shall be maintained for such purpose "*unless it be made to appear* to the court that the plaintiff has paid more than his equitable share of such taxes"), the rule in equity in respect to relief on account of illegality in the assessment and collection of taxes is applicable, and to warrant a recovery the objections to the proceedings must go to the very groundwork of the tax and necessarily affect materially its principle, and show that it must be unjust and unequal. It is not enough to show that the tax proceedings are irregular or void, but it must appear also that they are inequitable.

2. In such a case, proof of illegal and void additions to the assessment, increasing the plaintiff's taxes, may show a *prima facie* case, but the defendant is entitled at least to rebut it, and to show by way of vindicating the tax in equity and justifying the retention of the money sued for, that, had the plaintiff made a fair and truthful return of his property, he would have been properly taxed for the entire amount of the illegal tax, or a material part thereof.

3. Logs which had been cut in one town within six months previous to April 1, and piled there for shipment and actually shipped into another town prior to that date, never had a *situs* for assessment and taxation in the town where they had been piled for shipment, under secs. 2, 3, ch. 473, Laws of 1891, but were subject to assessment and taxation in the town into which they had been shipped.

Day and another vs. The Town of Pelican.

*State ex rel. Holt Lumber Co. v. Bellew,* 86 Wis. 189, distinguished and limited.

4. Where in such a case the owner of the logs had manufactured them into lumber at the place to which they had been shipped prior to May 1 of the same year, and on that day had sold and transferred the lumber to third parties, the vendor was not liable to be assessed therefor.

APPEAL from a judgment of the circuit court for Oneida county: CHAS. V. BARDEEN, Circuit Judge. *Reversed.*

This action was brought to recover $1,181.25, part of a tax of $1,614.38, assessed against the plaintiffs, who were engaged in the manufacture of lumber at Rhinelander, in the town of *Pelican,* Wisconsin, illegally, as it was claimed; payment thereof having been made under protest, to prevent the seizure and sale of their property. The plaintiffs made a return to the assessor of saw logs, without stating any quantity, valued at $8,250, as being all of their personal property liable to taxation in the defendant town May 1, 1892. It was alleged by the plaintiffs that the valuation of $8,250, so returned, had been raised by the assessor or board of review without notice to them, and that they had no personal property in the town liable to assessment exceeding in value the amount so returned. The defendant, in its answer, among other things, alleged that the plaintiffs had personal property liable to assessment greatly exceeding $8,250; and that the assessment of valuation thereof at $30,750, upon which the entire tax of $1,614.38 had been extended, was fair, just, and equitable; and that they had been called upon to pay, and paid, no more than their just share of the taxes of the town for the year in question. There was no substantial dispute as to the facts. The entire evidence as to what property the plaintiffs had, and its liability to assessment, was that of plaintiff *John Day.* After plaintiffs had delivered their said statement of personal property to the amount of $8,250, additions were made

Wis.]          AUGUST TERM, 1896.          505

Day and another vs. The Town of Pelican.

to the list without their knowledge or consent, namely, "one million feet of logs from 'Soo' railroad," with a valuation of $2,500, and 5,000,000 feet of timber, with a valuation of $20,000, the latter addition having been made by the assessor in June or July, and was meant, as the assessor testified, for lumber. The former addition was made by the town clerk during the session of the board of review, of which he was a member. The valuation of $8,250 so returned for saw logs by the plaintiffs was not changed, so that the entire assessment stood at a valuation of $30,750, as fixed by the assessor, as appears from the list.

The saw logs owned by the plaintiffs consisted of two lots,— one cut in the town of *Pelican*, of about 7,000,000 feet; and the other cut in Forest county, of between 9,000,000 and 10,000,000 feet. The logs cut in the town of *Pelican* were put in under executory contracts between the plaintiffs and different parties, for the purchase and delivery of divers lots of logs which the vendors in such contracts were engaged in cutting in that town; and the quantity received by the plaintiffs before and after the 1st of May was about 5,634,000 feet. Under said contracts, the vendors were to drive and deliver the logs to the plaintiffs at Rhinelander, except Gibson, who agreed to deliver his logs below a certain wagon bridge at the mouth of Lake creek. Some of said logs were to be so delivered at the boom, and some at Clayton's mill, and the amount delivered to the plaintiffs before the 1st day of May was about 2,000,000 feet. They had also purchased from other parties, and owned on the 1st of May, 1892, other logs cut in said town of *Pelican* within six months, to an amount, with those already delivered, of 3,000,000 feet, and for which they were liable to assessment. It was shown that the plaintiffs intended to list all said *Pelican* logs which they had received up to May, 1892, and also all of them that they expected or estimated that they might receive thereafter. Of the 7,000,000 feet

of logs above mentioned, 3,500,000 were purchased from Daniel McDonald, and over 1,000,000 from one George Gibson; and some question was made as to whether the title to such logs had passed to the plaintiffs, so that they were liable to be assessed as their property; and it appeared that they were not delivered to the plaintiffs until after May 1, 1892. The logs in Forest county had been cut during the logging season of 1891–92, and had all been brought to Rhinelander, in the town of *Pelican,* some days previous to the 1st of April, 1892. There was cut from these logs 5,186,000 feet of lumber up to May 1, and all of these logs not so cut into lumber were in the said town of *Pelican* on that day.

The plaintiff *John Day* testified that he did not intend to list any of the Forest county logs for assessment in the town of *Pelican.* The Forest county logs were decked up in the woods in the usual way, some of them were taken from the stump and hauled to the railroad track, and some were placed on skids, and run out to the main logging roads, or where they could be loaded on sleighs. Some loading docks would hold 300,000 feet, and others less. The plaintiffs had cars coming often enough to take the logs away as fast as they were ready, but occasionally the same were piled on the landing place. There was a crew at each siding for the purpose of loading the logs on the cars as they came, and they were rolled off the sleighs onto the cars. The arrangement was to handle the logs practically as fast as they were hauled in. These logs were worth from $9 to $10 per thousand, and about 5,000,000 feet of them remained on hand May 1, 1892, at Rhinelander. The lumber cut from the Forest county logs up to April 1 had been turned over to the Keller Lumber Company and to Palmer, Fuller & Co.; 1,868,000 feet of this lumber was manufactured during the month of April, of which the Keller Lumber Company received 1,551,000 feet, worth $15,510; and Palmer, Fuller &

Co. received 317,000 feet, worth $7,068,— in all, $23,118. This lumber had been piled, counted, and the piles marked with the names of these parties; and it was turned over to them on the 1st day of May, 1892.

There was no testimony to show that the plaintiffs owned 1,000,000 feet' of logs on or from the "Soo" railroad, in Forest county, or to show that said 1,000,000 feet had been received by plaintiffs, or had arrived within the town of *Pelican* on or after April 1, or to show that these logs remained banked or piled in Forest county for shipment. The town clerk who made the entry on the assessment list testified that he could not tell why he placed it there. The plaintiff *Day* testified that their logging operations in Forest county ended from the 20th to the 25th of March. The assessor testified that saw logs were assessed on the basis of forty per cent. of their actual value; the real value of logs being $4.50, $5, $6, and $8 per thousand. The evidence tended to show that the logs cut and put in, in the town of *Pelican*, varied materially in value, and were not on the whole an average quality.

The court found that they were such as were valued by the assessor on the board of review for said year at $1.50 per thousand feet. The court further found that the plaintiffs did not have or own upon the 1st day of May, 1892, any property in the town of *Pelican* except saw logs; and that the total value of all personal property legally assessable to the plaintiffs in said town of *Pelican* upon said 1st day of May did not exceed $8,250, according to the valuation placed by the assessor and the board of review for that year upon similar personal property, assessed in said town for taxation; and, as conclusions of law, that the plaintiffs had paid the sum of $1,181.25 more than their equitable share of the taxes levied in that town for the year 1892. Judgment was given in favor of the plaintiffs for that sum, with costs, from which the defendant appealed.

For the appellant there was a brief by *Alban & Barnes,* attorneys, and *D. H. Walker,* of counsel, and oral argument by *John Barnes.*

For the respondents there was a brief signed by *Miller & McCormick,* attorneys, and *Silverthorn, Hurley, Ryan & Jones,* of counsel, and oral argument by *S. S. Miller.*

PINNEY, J.   1. It is provided by sec. 1164, S. & B. Ann. Stats., that "any person *aggrieved* by the levy and collection of any unlawful tax assessed against him in any town, city or village, may have and maintain an action against such town, city or village for the recovery of all moneys so unlawfully levied and collected of him: . . . provided, however, that no action shall be maintained under the provisions of this section *unless it be made to appear* to the court that the plaintiff has paid *more than his equitable share of such taxes.*"   The plaintiffs were engaged in logging and lumbering at Rhinelander, in the town of *Pelican;* and it was their duty under the law to make a fair and truthful return of their personal property liable to taxation in that town, to the assessor.   There is no claim that they had any personal property so liable to assessment, except saw logs and lumber manufactured therefrom.   They sought to recover that part of the entire tax which was based wholly on the addition to their assessment, without notice, of two items,— one of $2,500, for 1,000,000 of logs "on the Soo railroad;" and $20,000 for timber.   The defendant town sought to show that the plaintiffs had logs and lumber subject to assessment and taxation in the defendant town for that year, to an amount and value so that they ought to have paid as large and perhaps a larger tax than they in fact paid.   The statute applies the rule in equity in respect to relief on account of illegality in the assessment and collection of taxes, denying all relief unless it is made to appear that the tax proceedings are not only illegal and void, but

that they are inequitable. The statute, as applied to the present case, operates, we think, to prevent a recovery by the plaintiffs of the amount extended on the illegal additions to their assessment, for personal property not listed by them, upon which, when fairly assessed, they should have been taxed in a like amount, or which would reduce their recovery to such sum as is in excess of their equitable share of the taxes of the town for that year. The rule governing equitable interference in cases of illegal or void taxation was stated in *Hixon v. Oneida Co.* 82 Wis. 515–531, where numerous cases in this court on that subject are cited; and it was held that a court of equity will not interfere to declare a tax invalid and restrain its collection, unless the objections to the proceedings go to the very groundwork of the tax, and necessarily affect materially its principle, and show that it must be unjust and unequal; that it is not enough to show that the tax proceedings are irregular or void, but it must also appear that they are inequitable. Proof of illegal and void additions to the assessment, which increased the taxes of the party bringing the action, may show a *prima facie* case, but the defendant is entitled, at least, to rebut it, and to show, by way of vindicating the tax in equity and justifying the retention of the money sued for, that, had the party made a fair and truthful return of his property, he would have been properly taxed for the entire amount or a material part of the alleged illegal tax. The plaintiff in such action cannot be allowed to take advantage of his own neglect or breach of duty under the law, so as to recover out of the treasury money he has paid into it under protest, and which it was in fact his duty, in equity and good conscience, to have thus paid in the first instance.

2. It is evident that the circuit court held that the 5,000,000 feet of logs, or thereabouts, cut in Forest county and brought by rail to the town of *Pelican*, and which on May 1, 1892, had not been sawed into lumber, were not liable to assess-

ment and taxation in that town. The judgment of that court goes upon the ground that the plaintiffs were not liable to be assessed for saw logs in that town for 1892 for a greater sum than $8,250. The evidence, in the most favorable view that can be taken of it for the plaintiffs, shows that they should have been assessed for not less than 3,000,000 feet of logs cut in the town of *Pelican* during the previous logging season, at a valuation of $4,500. What view the court adopted in respect to the portion of logs cut in that town, and not delivered by May 1, does not clearly appear. The plaintiff *Day* testified that he did not intend to include in the assessment as returned any logs cut in Forest county, and it would seem that the court adopted the assessment as returned by the plaintiffs, and gave judgment accordingly. The 5,000,000 feet of Forest county logs that had been cut within six months previous to April 1, 1892, and which appeared to have been piled in Forest county for shipment, and were actually shipped into the town of *Pelican* some days prior to that date, were worth about $50,000, and, if assessed at forty per cent. of their value (the rate in use by the assessor that year), would have added $20,000 to the plaintiffs' assessment. We think that these logs should have been assessed to the plaintiffs as of the 1st of May in that year, and that they never had a *situs* for assessment and taxation in the town in Forest county where they were piled for shipment.

In the case of *State ex rel. Holt L. Co. v. Bellew*, 86 Wis. 189, the question was whether logs that had been cut and banked in the town of Armstrong six months before April 1, and *on that date* remained in such town, were lawfully subject to assessment in said town, or whether an assessment thereof in the city of Oconto. where it was intended that they should be manufactured into lumber, could be supported; and it was held in that case that all saw logs cut within six months prior to April 1, under sec. 2, ch. 473,

Laws of 1891, were to be assessed in the assessment district in which they were banked or piled, except logs which were to be sawed or manufactured in a mill in this state owned by the owner of such logs, and they could be brought under the operation of the exception in the act only by a strict compliance with the proviso following the exception in sec. 2 of this act. The decision in that case is clearly correct, but the case did not involve the present question of the place of assessment of logs cut within six months, and piled for shipment prior to April 1, and which, *before that date*, had been shipped to the mill in another assessment district, where they were to be manufactured into lumber. The language used in the opinion, owing to its generality, and by reason of not having been expressly limited to the case before the court, is susceptible, perhaps, of a broader application than was intended, but this was the fault of the writer. By the second section of ch. 473 of the Laws of 1891, it is provided that " all saw logs . . . cut in this state within six months prior to the 1st day of April of any year shall be assessed in the assessment district *where the same shall be banked or piled* for driving or shipment either by water or railroad, except that saw logs and timber which are to be sawed or manufactured in any mill within this state which is owned by the owner of such logs or timber, shall be assessed as manufacturers' stock, in the district where such mill may be located; provided, such owner or owners shall on or before the 15th day of June of each year, file with the assessor in the assessment district where such logs *are banked or piled* as aforesaid an affidavit showing," etc. The third section of the act shows more clearly the scope and effect of the section just cited. It provides that " it shall be the duty of the assessor of the assessment district in which any such saw logs . . cut within six months prior to the first of April, *may be* banked or piled as aforesaid, to ascertain the amount of such property which *may*

Day and another vs. The Town of Pelican.

*be* or *may have been* in his assessment district *at any time during the month of April* in each year, by actual view as far as practicable to fix the value of *such* property, and *assess the same* to the owner thereof *as of April 1, of each year*, as other property is assessed;" showing that the assessor of such district has no duty to perform in respect to logs removed therefrom prior to April 1, but is authorized to assess only logs that remain in his district April 1, or may have been therein during the said month of April. We hold, therefore, that the 5,000,000 feet of Forest county logs, cut within six months previous to April 1, 1892, and piled for shipment in that county, and which had been shipped previous to that date into the town of *Pelican*, were subject to assessment and taxation therein in 1892, and should have been listed by the plaintiffs for that purpose. It follows, therefore, that the plaintiffs must deduct from their claim in this action the amount of the taxes that should have been assessed and charged against them on account of these logs. To this extent, at least, it is clear that they cannot be said to be "aggrieved" by the tax illegally assessed against them, and as to that amount it is plain that they have not "paid more than their equitable share" of the taxes of the defendant town for 1892. S. & B. Ann. Stats. sec. 1164.

3. The plaintiffs were not liable, we think, to be assessed in the defendant town for the lumber manufactured out of that portion of the Forest county logs that had been sawed prior to May 1, 1892, and turned over on that day to the Keller Lumber Company and to Palmer, Fuller & Co. Personal property, in general, is required to be assessed as of the 1st day of May in each year. The making of the assessment as of that date involves the question of ownership, and in many cases of location or *situs* of property for taxation. It would be unreasonable and unjust to hold, in respect to a sale and transfer of title perfected May 1, that the prop-

erty so sold might be assessed to the vendor, and to the vendee as well, by reason of both having held the title thereto on that day. The manifest equity in such case would seem to require that the mere *liability* of the property to assessment should attend the transfer of title; and the statute (sec. 1, ch. 473, Laws of 1891), which provides that "no change of location or *sale* of any personal property *after* the first day of May in any year shall affect the assessment made in such year," seems to support that view. The assessment is required to be made after that date, but in general as of that date. An assessment of such property, under the circumstances, to the vendee, would, no doubt, be supported.

4. There is no evidence in the case that would seem to justify an assessment against the plaintiffs for 1892 for the 1,000,000 of logs added to their list as being "on the Soo railroad." The evidence fails to show whether these logs were ever brought into the town of *Pelican*, or, indeed, anything satisfactorily about them. The evidence in the case in respect to the quantity, as well as the value, of the logs cut in the town of *Pelican*, for which the plaintiffs should have been assessed, is quite uncertain and unsatisfactory, and so, too, as to the quantity of logs brought from Forest county. As the judgment of the circuit court must be reversed on account of the error in respect to the liability of the plaintiff to be assessed and taxed for the logs brought from Forest county, and which had not been sawed prior to May 1, we will, under the circumstances, reverse the judgment of the circuit court, and direct a new trial of all the issues in the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.