MARINA FONTANA, a limited partnership, Marina Fontana, Inc., a corporation, and ABKA, an Illinois general partnership, Plaintiffs-Respondents,

v.

VILLAGE OF FONTANA-ON-GENEVA LAKE, a municipal corporation, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81–654. Argued February 2, 1983.—Decided March. 1, 1983.*

(Also reported in 330 N.W.2d 211.)

For the defendant-petitioner there were briefs by *Robert D. Sundby* and *DeWitt, Sundby, Huggett & Schumacher, S.C.,* Madison, and oral argument by *Robert D. Sundby.*

For the plaintiffs-respondents there was a brief by *John L. Maier, Jr.* and *Greenwald, Maier & Hudec, P.C.*, Rockford, Illinois, and oral argument by *John L. Maier, Jr.*

LOUIS J. CECI, J.   This is a review of a decision of the court of appeals which affirmed the judgment of the trial court granting a refund to the plaintiffs for property taxes levied in 1972.[1]  The issues presented on this review are: (1) In a taxpayer's action to recover illegal real estate taxes under sec. 74.73, Stats.,[2] can the tax-collecting entity raise as a defense or counterclaim, seeking an offset, an alleged underpayment of personal property taxes relating to the same property for the same year; and (2) if the tax-collecting entity can raise such a claim, in what fashion must it be raised or pleaded?

---

[1] *Fontana v. Village of Fontana-on-Geneva Lake*, 107 Wis. 2d 226, 319 N.W.2d 900 (Ct. App. 1982).

[2] Section 74.73, Stats., provides in pertinent part:

"74.73 **Recovery of illegal taxes plus interest; limitation.**   (1) Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city or village which collected such tax in the manner prescribed by law for filing claims in other cases. If it appears that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of illegal taxes have been complied with, the town board, village board or common council may allow and the town, city or village treasurer shall pay such person the amount of the claim found to be illegal and excessive. If any town, city or village fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected, together with interest at the legal rate computed from the date of filing the claim. Every such claim shall be filed, and every action to recover any money so paid shall be brought, within one year after such payment.

". . .

"(2m) No claim shall be allowed and no action shall be maintained under this section unless it appears that the plaintiff has paid more than his equitable share of such taxes."

Because we conclude that under sec. 74.73(2m), Stats., the tax-collecting entity can only raise as a defense the alleged underpayment of those taxes which are the subject of the taxpayer's complaint, we affirm.

The property at issue is "The Abbey," a resort-hotel complex located in the village of Fontana-on-Geneva Lake. It includes approximately eighty-eight acres of land with building improvements. The Abbey was built in 1962–63 by Marina Fontana, a limited partnership that was also the original owner. The partnership was incorporated in 1969 as Marina Fontana, Inc. At the time of the 1970 tax assessment, a major addition was under construction. The village assessor determined that it was fifteen percent completed in 1970 and made a partial assessment based on fifteen percent of the estimated replacement cost less depreciation. The method of calculating the estimated total cost was derived from the *Wisconsin Property Assessment Manual,* rather than from actual cost figures.

The addition was completed in 1971 and placed on the tax roll on May 1, 1972. For the 1972 assessment, the assessor made the new property valuation by taking the figure for the 1970 assessment and increasing it to one hundred percent, rather than by using the actual construction-cost figures. At that time, however, the village was assessing at only eighty percent of full value. The assessment resulted in an increase of $2,268,800 in the valuation of the property from 1971 to 1972, all of which was attributed to the completion of the addition. However, the owners did not learn of the increased assessment until the tax review board had adjourned *sine die,* because no notice of the increase in the assessment was sent to them. The owners therefore paid the assessed tax of $187,459.26 under protest and filed a claim for a refund on January 15, 1973. The village took no action on the claim at that time.

On March 1, 1973, Marina Fontana, Inc. sold The Abbey to ABKA, an Illinois general partnership, for $6,613,000 in a bulk sale transaction. The $6,613,000 sale price thus included both the real estate and the personal property. ABKA also purchased the property tax refund claim from the sellers in the March 1, 1973, transaction. On April 12, 1973, the present and former owners of The Abbey (ABKA, Fontana Marina, and Fontana Marina, Inc.) commenced this action to recover that portion of the 1972 taxes paid which they claimed was the result of an excessive increase in the valuation of the real estate, due to the addition. The part of the 1972 tax assessment attributable to the personal property was not challenged by the plaintiffs. The village demurred to the complaint on the grounds that the owners failed to protest the assessment through the board of tax review. The trial court overruled the demurrer and this court affirmed, holding that the taxpayers' failure to appear before the board did not preclude this action, because the village assessor did not give notice of the increased assessment. *Marina Fontana v. Vil. of Fontana-on-Geneva Lake,* 69 Wis. 2d 736, 233 N.W.2d 349 (1975).

In its answer to the complaint, the village denied the plaintiffs' claim that they paid more than their fair share of taxes and counterclaimed that in 1972, the personal property was underassessed and that some of the plaintiffs' real property located in the village had been omitted from the tax rolls. The village also alleged that the total real estate should have been assessed as a package and the tax levy based on the value of both the real and the personal property.

Prior to trial, the taxpayer filed a motion to strike the counterclaim and, in settlement of this dispute, a stipulation was entered into. By this stipulation, the village's counterclaim was withdrawn. The written stipulation also stated that the village would

"not be precluded by reason of withdrawal of its counter-claim from proving in defense to the Plaintiff's Complaint the fair market value for 1972 of the property of the Plaintiff's which is the subject of its Complaint, including property which may have been omitted from assessment but was, in fact, owned by the Plaintiff and subject to assessment on May 1, 1972."

The trial on the merits commenced on July 11, 1978, in the circuit court of Walworth county. The trial court concluded that the real estate had not been " 'valued for tax purposes from actual view or from the best information that the assessors can practicably obtain,' " as sec. 70.32(1), Stats., requires.[3] The court decided that the assessor's failure to give any consideration to the actual construction costs and the value as established by the subsequent sale showed that the assessor improperly

---

[3] Section 70.32(1), Stats., provides:

"70.32 **Real estate, how valued.** (1) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and their value; but the fact that the extent and value of minerals or other valuable deposits in any parcel of land are unascertained shall not preclude the assessor from affixing to such parcel the value which could ordinarily be obtained therefor at private sale. If on the assessment date occurring in 1957 or in any year thereafter any person other than a governmental unit of Wisconsin owns real estate in which a Wisconsin governmental unit has retained mineral rights, timber rights or an easement or any similar interest in such real estate, the value of any such retained right shall be eliminated in determining the assessable value of such property, and such retained interest shall be excepted in the assessment description of such land and in any notice, tax certificate or tax deed following from any such assessment."

assessed the property by using the estimated cost approach alone and that the assessment was, therefore, void. The court ordered a reassessment under sec. 74.74 (1), Stats., on December 20, 1978.

The reassessment indicated that the village had originally underassessed The Abbey by a net difference of $7,411. There were two main reasons for the new, higher valuation on reassessment. First, the assessor did not consider the sale price in establishing his new value. Second, the assessor decided to include a complete revaluation of the 1972 personal property assessment even though the taxpayer never objected to the initial assessment of the personal property and the trial court had not ordered a reassessment of the personal property. The assessor determined that the personal property had been underassessed and that the taxpayer had escaped paying taxes on $755,000 of personal property.

Objections to the reassessment were filed. In a February 19, 1980, memorandum decision, the trial judge reiterated his opinion that the 1973 sale, an arm's-length transaction, was the best possible criterion of value. Accordingly, he declared the reassessment void. The court then undertook to determine the proper assessment itself, pursuant to sec. 74.74 (2), Stats. The court ultimately determined the proper assessment of the realty to be $4,318,400. It used the $6,613,000 sales price as the correct value of the combined realty and personalty. It therefore subtracted the part of the sale price the village had attributed to personal property ($1,215,000) from the total sale price. The 1972 village assessment rate of eighty percent of value was then applied to this remaining figure of $5,398,000, resulting in the $4,318,400 figure for the assessed value of The Abbey's real estate. From this, the court concluded that the proper tax was $122,081.17, and a refund was called for. It awarded the plaintiffs judgment for $65,378.09 plus interest and costs.

Motions for further consideration and for consideration of constitutional issue were heard and denied by the trial court, and judgment was entered on March 2, 1981.

The court of appeals affirmed the judgment. The court considered several issues concerning the 1972 assessment and the subsequent reassessments by the village and the trial court, including the effect of the alleged underpayment of personal property taxes on the right to recover a refund for overpayment of real property taxes. The court stated that the trial court found the village's reassessment to be void in part because of the village's revaluation of the 1972 personal property assessment. The court of appeals agreed with the trial court's holding that the assessor had no authority to reassess the personal property because the plaintiffs had never objected to the personal property assessment and the trial court had never ordered such a reassessment. The court also stated that the issue of the personal property assessment was not properly pleaded or presented to the trial court, and it declined to consider that issue.

The first issue presented, whether in a taxpayer's action to recover illegal real estate taxes the village can raise as a defense or counterclaim, seeking an offset, an alleged underpayment of personal property taxes, involves the interpretation of sec. 74.73(2m), Stats., which reads:

"74.73 **Recovery of illegal taxes plus interest; limitation. . . .**
(2m) No claim shall be allowed and no action shall be maintained under this section unless it appears that the plaintiff has paid more than his equitable share of *such taxes.*" (Emphasis added.)

The plaintiffs contend that the requirement for a refund that the taxpayer has "paid more than his equitable share of such taxes" refers to the specific taxes being challenged or, stated another way, "such taxes" does not

refer to the taxpayer's total tax burden. Thus, according to the plaintiffs, a taxpayer may file a claim for recovery of allegedly illegal real property taxes on one parcel without necessarily bringing into issue the level of assessments (during the same year) for other parcels of real property or for personal property which were not objected to and for which the tax levied has been paid in full.

The village argues that once any claim for a refund is filed, the total [village] tax burden of the taxpayer for that year is in issue.[4] Basically, the village emphasizes

---

[4] It should be noted that other statutes provide ways for tax-collecting entities to recover additional taxes when the property was originally underassessed.

Section 70.43, Stats., provides:

"70.43 **Correction of errors by assessors.** If any assessor shall discover that any error was made in any assessment roll during the preceding year, by which the valuation of any real or personal estate subject to taxation was increased or reduced from the true assessed valuation thereof, he shall correct such error by adding to or subtracting from, as the case may be, the valuation of such property on his assessment roll as fixed by him, the amount omitted from or added to the true assessed valuation in consequence of such error and make a marginal note of such correction, and the result shall be taken as the true valuation of such property for the latter year and a final correction of such error."

Section 70.44(1), Stats., provides in pertinent part:

"70.44 **Assessment; property omitted.** (1) Real or personal property omitted from assessment in any of the 5 next previous years unless previously reassessed for the same year or years, shall be entered once additionally for each previous year of such omission, designating each such additional entry as omitted for the year 19... (giving year of omission) and affixing a just valuation to each entry for a former year as the same should then have been assessed according to his best judgment, and taxes shall be apportioned, and collected on the tax roll for such entry. . . ."

However, since the assessment in question was for the year 1972 and the village's claim (as an offset) for the alleged underassessment of personalty was not made until 1979, this avenue may not have been open to the village. The plaintiffs thus argue

principles of equity in support of this position.[5] In this regard, it asserts that the taxpayer escaped paying taxes on $754,983[6] of personal property; therefore, it would be inequitable for the taxpayer to get a refund for the over-assessment of taxable real property. The village contends that since the taxpayer neither alleged nor proved that it paid more than its equitable share of the village's total tax burden, it is not entitled to any refund.

This line of argument, however, does not provide an answer to the question of whether the phrase "such taxes" in sec. 74.73 (2m), Stats., includes all taxes owed to a taxing entity or only those complained of. The village cites *Day v. Pelican*, 94 Wis. 503, 69 N.W. 368 (1896), in support of its position that an inquiry as to whether the complaining taxpayer had paid taxes on other property is appropriate.

"Proof of illegal and void additions to the assessment, which increased the taxes of the party bringing the action, may show a *prima facie* case, but the defendant is entitled, at least, to rebut it, and to show, by way of vindicating the tax in equity and justifying the retention of the money sued for, that, had the party made a fair and truthful return of his property, he would have been properly taxed for the entire amount or a material part of the alleged illegal tax. The plaintiff in such action cannot be allowed to take advantage of his own neglect or

that the attempt by the village to revalue the taxpayer's personal property for 1972 was barred by the passage of time.

[5] The village asserts that, according to decisions of this court, this statutory cause of action is a codification of equitable rules requiring a complainant seeking to avoid taxes to allege a willingness to pay taxes justly chargeable to him. *Krom v. Antigo*, 220 Wis. 542, 544, 265 N.W. 716 (1936); *see also, Fifield v. Marinette County*, 62 Wis. 532, 22 N.W. 705 (1885); *Wells v. The Western Paving & Supply Co.*, 96 Wis. 116, 121–22, 70 N.W. 1071 (1897).

[6] The plaintiffs dispute the village's assertion that the personal property was underassessed. No finding has been made on this question by the courts below, since it was deemed to be irrelevant to the disposition of the case. We agree.

breach of duty under the law, so as to recover out of the treasury money he has paid into it under protest, and which it was in fact his duty, in equity and good conscience, to have thus paid in the first instance." *Id.* at 509.

In our opinion, however, *Day* is distinguishable from the case before us. In *Day,* the taxpayer's claim for refund and the defense raised by the tax-collecting entity both concerned the tax levied on logs. The taxpayer had claimed overassessment for a certain portion of the logs which were located in a certain area of the town. The lumber tax was to have been assessed on all of the taxpayer's logs within the entire town. The town had claimed that while there might have been overassessment on one portion, the rest of the logs within the town were underassessed. This court held against the taxpayer. However, unlike *Day,* the instant case does not involve the alleged overassessment of one part of the taxpayer's personal property versus the alleged underassessment of other personal property, but instead involves a separate challenge to the real property tax and an alleged underassessment of a personal property tax.[7] When the plaintiffs in the case before us challenged the real property taxes, they did not automatically bring The Abbey's personal property taxes into question.

The village's strained construction of sec. 74.73 (2m), Stats., must be rejected for other reasons. We agree with the plaintiffs that both the language of sec. 74.73, standing alone, and its logical meaning when read in the context of the entire statutory scheme for recovery of illegal taxes, suggest that the inquiry as to payment of an "equitable and just share" of taxes is limited to the par-

[7] The village has cited *Fifield v. Marinette County,* 62 Wis. 532, 22 N.W. 705 (1885). In *Fifield,* this court held that a taxpayer must allege an equitable offer to pay taxes justly chargeable. However, it limited this obligation "to the property of the plaintiff on account of which he seeks relief." 62 Wis. at 541.

ticular assessment challenged by the taxpayer as being void.[8] When sec. 74.73 is read in its entirety, it is clear that the limiting phrase "such taxes" in sub. (2m) must refer to a specific type of taxes defined earlier in the section, in sec. 74.73(1). Subsection (1) provides that "[a]ny person aggrieved by the levy and collection of any unlawful tax" may file a claim. Thus, the phrase "such taxes" logically refers to the "unlawful tax" which is the subject of the sec. 74.73 claim, rather than to the entire tax burden. Such a clear, logical construction of a statute is to be favored by courts. *Wis. Environmental Decade, Inc. v. Public Service Comm.*, 84 Wis.2d 504, 267 N.W.2d 609 (1978); *State v. Burkman,* 96 Wis. 2d 630, 292 N.W.2d 641 (1980).

The plaintiffs' more narrow construction of sec. 74.73 (2m), Stats., is also supported by the provisions of other statutes dealing with the manner in which reassessments are to be accomplished when an assessment is found to be void. Section 74.74(1)[9] provides for reassessment by the

---

[8] Section 74.73(2m), Stats., is arguably ambiguous. However, it is well established that any ambiguity or doubt in a taxing statute is to be resolved against the taxing government. *See, Janesville Data Center v. Dept. of Revenue,* 84 Wis. 2d 341, 267 N.W.2d 656 (1978); *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 257 N.W.2d 855 (1977); *Burnet v. Niagara Brewing Co.,* 282 U.S. 648 (1931); *United States v. Merriam,* 263 U.S. 179 (1923).

[9] Section 74.74(1), Stats., provides:

"74.74 **Reassessment of plaintiff's taxes.** (1) In any action for the recovery of any money paid as and for taxes levied either upon real or personal property, or both, if upon the trial it shall appear that the assessment upon which the taxes were so paid is void, the court, before entering judgment, shall continue the action for a sufficient time to permit a reassessment of the property affected by such void assessment, and such reassessment shall thereupon be made in accordance with the provisions of law. If from such reassessment when so made it shall appear that the sum or sums paid for taxes by the plaintiff are no greater than his equitable and just share of the taxes as so reassessed, judgment shall be entered for the defendant; and if from such reassessment

tax-collecting entity "of the property affected by such void assessment." Section 74.74(2), Stats.,[10] allows court determination of "the amount of taxes which were justly chargeable against the lands involved in the action." Further, sec. 75.54(4), Stats.,[11] which deals

it shall appear that the plaintiff has paid more than his equal and just share of the taxes judgment shall be entered in his favor for the excess only over such share. The validity of the reassessment herein provided for may be attacked and determined, and subsequent reassessments may be had as provided by s. 74.54; provided, that such reassessment shall in all cases be made by the assessor of the assessment district wherein the property to be reassessed is situated."

[10] Section 74.74(2), Stats., provides:

"(2) If however, in any such action now pending or which may be begun hereafter the evidence enables the court to determine, with reasonable certainty, the amount of taxes which were justly chargeable against the lands involved in the action, the court, in its discretion, may proceed to judgment without staying proceedings or ordering a reassessment, if it finds that it is for the best interests of all parties to the action that it should do so."

[11] Section 75.54(4), Stats., provides:

"75.54 **Reassessment of taxes by order of court.** . . .

"(4) If such reassessment and tax roll be held by the court regular and valid or if no objections thereto shall be filed, the court shall make an order requiring the party or parties contesting the original assessment, tax or tax proceeding to pay into court, for the use and benefit of the party entitled thereto the amount which by such reassessment he or they justly ought to pay. If the amount of tax imposed upon the property of such contesting party by such valid reassessment, or by the subsequent determination and order of the court, shall equal or exceed the amount imposed thereon by the original assessment and tax roll, the party or parties contesting the validity of such assessment shall be adjudged to pay the costs of such suit; otherwise, upon complying with the order of the court last aforesaid, he or they shall be entitled to judgment with costs; provided, however, that no judgment rendered in any such action shall in any way affect the validity of any tax against any other person than the parties to such action or any tract or parcel of land or other property than that described in complaint therein."

with reassessment of taxes by order of the court, provides "that no judgment rendered in any such action shall in any way affect the validity of any tax against any other person than the parties to such action or any tract or parcel of land or other property than that described in complaint therein." Section 75.54(6) [12] contains similar language. Finally, secs. 70.43 and 70.44, expressly provide that the assessor can correct errors because of an erroneous assessment or because property was omitted from the original assessment. However, these statutes set time limits of one and five years, respectively. No provision is made for the type of setoff which the village seeks. [13]

We think that the pertinent statutory provisions direct us to the conclusion that the words "such taxes" in sec. 74.73(2m), Stats., refer only to those taxes complained of by the taxpayer. Therefore, keeping in mind the principle that an ambiguity in a taxing statute is to be resolved in favor of the taxpayer, we hold that the village could not seek as an offset the alleged underpayment of personal property taxes relating to The Abbey in 1972.

---

[12] Section 75.54(6), Stats., provides:

"(6) If however, in any such action now pending or which may be begun hereafter the evidence enables the court to determine, with reasonable certainty, *the amount of taxes which were justly chargeable against the lands involved in the action,* the court, in its discretion, may proceed to judgment without staying proceedings or ordering a reassessment, if it finds that it is for the best interests of all parties to the action that it should do so." (Emphasis added.)

[13] The broad interpretation of § 74.73(2m), Stats., advanced by the village would present additional problems in its application. It is apparently the duty of the taxpayer to plead and prove payment by him of more than an equitable share of "such taxes." *Krom v. Antigo,* 220 Wis. 542, 544, 265 N.W. 716 (1936). We agree with the plaintiffs that to require the taxpayer to prove that he paid more than his equitable share of *all* taxes is unreasonable and could have the effect of discouraging legitimate refund claims.

Because of our disposition of the case on this issue, it is not necessary to address the other question presented.

*By the Court.*—The decision of the court of appeals is affirmed.